# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

### No. 22-2392

### CELLCO PARTNERSHIP, Appellee

v.

### WHITE DEER TOWNSHIP
### ZONING HEARING BOARD, Appellant

On Appeal from the U.S. District Court for the
Middle District of Pennsylvania
Civil Action No. 4-20-cv-02438

### APPELLANT'S BRIEF

Susan J. Smith, Esquire
The Law Office of Susan J. Smith
319 N. 24th Street
Camp Hill, PA  17011
ssmith@sjsmithlaw.com
(717) 763-1650

# TABLE OF CONTENTS

1.   Table of Citations..........................................................................iv

2.   Subject Matter and Appellate Jurisdiction.....................................1

3.   Statement of Issues Presented........................................................2

4.   Statement of Related Cases and Proceedings.................................3

5.   Statement of the Case .....................................................................4

6.   Summary of Argument ...................................................................11

7.   Argument ........................................................................................12

   I.   The Telecommunications Act expressly provides for
        the "preservation of local zoning authority." ...................12

      A.   The TCA Section 332(c)(7)(A) "preservation of
           local zoning authority" is acknowledged in the
           2009 and 2018 FCC Declaratory Rulings ...................14

      B.   This Court has recognized that a *bona fide* local
           zoning concern can drive a zoning decision without
           violation of the TCA, thereby recognizing the legal
           effect of TCA Section 332(c)(7)(A)'s express
           preservation of local zoning authority.........................16

      C.   The genesis and parameters of "local zoning
           authority" preserved by the TCA Section
           332(c)(7)(A) .................................................................17

   II.  The White Deer Zoning Hearing Board denied
        Cellco's application for dimensional variances where
        Cellco failed to meet its burden of proof to provide
        record support for the required findings for the grant
        of variance as set forth in Section 910.2 of the
        Pennsylvania Municipalities Planning Code and as
        guided by the body of controlling law articulated by
        the Pennsylvania Supreme Court and Commonwealth
        Court; the Decision does not violate the TCA .................19

A.   In its adjudication of a TCA claim and determination, the reviewing court must be guided by relevant state law authorities ................................. 19

    1.  Pennsylvania law on variance ............................ 22

    2.  Required finding of "unnecessary hardship" ..... 25

B.   Substantial evidence supports the White Deer Zoning Hearing Board's denial of the Application for variances ................................................................. 26

    1.  Substantial evidence supports the White Deer Zoning Hearing Board's declination to made the MPC-required finding that Cellco had demonstrated "unnecessary hardship"................. 27

    2.  Substantial evidence supports the White Deer Zoning Hearing Board's declination to make the MPC-required finding that Cellco had satisfied the minimization requirement. .............. 28

III.  The White Deer Zoning Hearing Board's Decision does not violate either this Court's "least intrusive" standard or the FCC 2018 Declaration's "materially inhibits" standard ............................................................ 29

A.   No proposal was offered to cease the residential use or resite the residential and other structures on the Property.  Cellco relied solely on a private agreement with the owner of the Property for lease of a certain portion of the Property. ............................ 29

B.   Cellco identified DCNR lands as suitable to fill its gap, but made the unilateral business decision to not consider those lands because of a "moratorium" which operates as a state action in violation of the TCA ............................................................................ 30

IV.  The trial court failed to give proper weight to Section 332(c)(7)(B) of the TCA and the body of Pennsylvania statutory and common law controlling zoning hearing board decisions on variances and made an error of law in giving deference to Cellco's unilateral decision to consider only privately owned properties ........................ 31

8.    Conclusion .................................................................. 32

Certificate of Counsel .................................................. 33

Certificate of Word Count ........................................... 33

Identical PDF and Hard Copy Certificate.................................. 33

Certificate of Virus Scan............................................. 33

Certificate of Service ................................................ 34

TABLE OF CITATIONS

**Cases:**

*American Tower Corp. v. City of San Diego*,
    763 F.3d 1034 (9th Cir. 2014) ............................................................ 20

*APT Pittsburgh Ltd. Partnership v. Penn Township,*
    196 F.3d 469 (3d Cir. 1999) ........................................................ 16, 20

*AT&T Wireless PCS, Inc. v. Virginia Beach,*
    153 F.3d 423 (4th Cir. 1998) ................................................................ 21

*Cellular Telephone Co. v. Zoning Bd. of Adjustment of the Borough*
    *of Ho-Ho-Kus*, 197 F.3d 64 (3d Cir. 1999) .................................. 13, 20

*Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926)........................................ 18

*Fairview Twp. v. Fairview Two. Zoning Hearing Bd.,*
    233 A.3d 958 (Pa. Cmwlth. 2020)................................................. 23, 25

*Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh,*
    721 A.2d 43 (Pa. 1998)......................................................................... 26

*Horvath Towers III, LLC v. Zoning Hearing Bd. of Montoursville Borough,*
    218 U.S. Dist. LEXIS 5563 (Pa. M.D. 2018).................................... 21

*Kneebone,* 273 A.3d 566 (Pa. 2021)................................................. 23, 25, 26

*Larsen v. Zoning Bd. of Adjustment,* 672 A.2d 286 (Pa. 1996).............. 23, 24

*Metal Green Inc. v. City of Philadelphia,* 266 A.3d 495 (Pa. 2021)...... 18, 24

*Northeast Pa. SMSA LP v. Smithfield Twp. Bd. of Supers.,*
    433 F. Supp. 3d 703 (Pa. M.D. 2020).................................................. 21

*Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.,*
    *181 F.3d 403 (3d Cir. 1991)*........................................................ 13, 21

*Second Generation Properties, L.P. v. Town of Pelham*
   313 F.3d 620 (2002) ........................................................... 20

*Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630 (2d Cir 1999) .............. 19, 21

*T. Mobile S., LLC v. City of Roswell,* 574 U.S. 293 (2015)......................... 13

*Yeager v. Zoning Hearing Bd. of Allentown,*
   779 A.2d 595 (Pa. Cmwlth. 2001)............................................... 25, 26

**Statute, Law, Etc.:**

*In the Matter of Accelerating Wireless Broadband Deployment by*
   *Removing Barriers to Infrastructure Invest.*,
   33 F.C.C.R. 9088 (2018) .................................................... 15

State Laws as Rules of Decision, 28 U.S.C.S. §1652.................................. 19

Telecommunications Act of 1996 (TCA)
   47 U.S.C. §332(c)(7)(A)......................................................12-14, 17
   47 U.S.C. §332(c)(7)(B)(i)(II)................................................. 14, 21, 31

Pennsylvania Municipalities Planning Code, 53 P.S. §10101, *et seq.* .......... 4
   53 P.S. §10901 ............................................................ 8, 19
   53 P.S. §10908 ................................................................ 8

## SUBJECT MATTER and APPELLATE JURISDICTION

The Appellant, White Deer Township Zoning Hearing Board (hereinafter White Deer Zoning Hearing Board), issued a Written Decision denying the Application of Appellee, Cellco Partnership (hereinafter Cellco), which sought variances from the White Deer Township Zoning Ordinance in order to construct a cellular tower upon leased premises. Cellco filed a Complaint in the United States District Court for the Middle District of Pennsylvania, alleging that the Decision violated provisions of the Federal Telecommunications Act. Motions for Summary Judgment were filed by both parties, and an Order and Memorandum Opinion were issued granting the Motion for Summary Judgment of Cellco Partnership and denying the Motion for Summary Judgment of White Deer. The matter before the District Court is final and appealable to this Honorable Court. The Court of Appeals for the Third Circuit has jurisdiction of appeals from all final decisions of the District Court, pursuant to 28 U.S. Code §1291.

## ISSUES PRESENTED ON APPEAL

Whether White Deer Zoning Hearing Board's denial of the variances was based on *bona fide* local zoning concerns and land use policies within the regulatory authority of the municipality expressly preserved by Section 332(c)(7)(B) of the Telecommunications Act of 1995?

> Suggested Answer:  Yes

Whether the White Deer Zoning Hearing Board made no error of law in denying Cellco Partnership's application for dimensional variances where Cellco failed to provide record support for the required findings for the grant of variance as set forth in Section 910.2 of the Pennsylvania Municipalities Planning Code and pursuant to the applicable controlling body of Pennsylvania common law?

> Suggested Answer:  Yes

Whether the trial court failed to give proper weight to Section 332(c)(7)(B) of the Telecommunications Act of 1995, the body of Pennsylvania statutory and common law controlling zoning hearing board decisions on variances, and the Township's Zoning Ordinance which establishes dimensional standards and requirements by zoning district in granting the Motion for Summary Judgment of Cellco Partnership and reversing the Decision of the White Deer Zoning Hearing Board?

> Suggested Answer:  Yes

**STATEMENT OF RELATED CASES AND PROCEEDINGS**

Counsel for Appellant certifies to this Honorable Court that there are no related cases or proceedings to the within matter.

## STATEMENT OF THE CASE

Cellco made application to the White Deer Zoning Hearing Board seeking variances from dimensional requirements and standards of the Zoning Ordinance to add a telecommunications facility use, by means of construction of a monopole, on a leased portion of property in the Township already improved with and in current use as a residential use, located at 8779 White Deer Pike, New Columbia (Property).

Pennsylvania has enacted enabling legislation for the regulation of land use by zoning, the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, 53 P.S. § 10101 et seq. (MPC).

White Deer Township has enacted a Zoning Ordinance, inclusive of a Zoning Map. [1]

The Property is zoned Woodland District.  Appx219, 279.

The Zoning Ordinance contains generally applicable standards and requirements for the use of properties in the Woodland District, including lot size and setback requirements.

The Property is already improved with a dwelling and other buildings and structures.  Appx76.

---

[1] The Zoning Ordinance is presumed valid.  Cellco did not submit a substantive challenge to the Zoning Ordinance.

The Property is substandard in size for the current residential use.  Appx75-76.

Cellco intends to lease a 2,600 square foot portion of the Property for a telecommunications facility use; Cellco made no offer to purchase the leased portion or the Property itself. Appx31, 138-140.

A telecommunications facility use is a permitted use in the Woodland District.  Appx38.

Cellco proposes to add a telecommunications use to the Property without the cessation of the residential use of the Property. Appx35, 87, 114, 138-139.

Cellco proposes to site a telecommunications structure on the Property without removal or resiting of the dwelling structure or other structures and buildings on the Property. Appx35, 87, 112-114, 139, 185.

The Zoning Ordinance contains standards and requirements specific to a telecommunications use, including a lot size and setback requirements. Appx221.

Because the proposed siting of the telecommunications facility does not meet the general requirements of the Zoning Ordinance for properties in the Woodland District or the specific requirements of the Zoning Ordinance for a telecommunications facility use, Cellco sought numerous and substantial variances as follows:

1. Section 307 Minimum Lot Size.  The Zoning Ordinance requires 3.0 acres for the principal dwelling use and an additional 1.0 acre for the proposed telecommunications facility use.  For the telecommunications facility use as proposed, Cellco sought a variance of .0597 acres/2600 square feet. The variance sought is a 94% deviation from the minimum lot size requirement.

2. Section 432(H) Setback.  The Zoning Ordinance requires a setback of 219 feet.  For the telecommunications facility use as proposed, Cellco sought a variance of 179 foot from the northern property line. The variance sought is a 72% deviation from the setback requirement.

3. Section 432(H) Setback.  The Zoning Ordinance requires a setback of 219 feet.  For the telecommunications facility use as proposed, Cellco sought a variance of 180 feet from the eastern property line.  The variance sought is a 82% deviation from the setback requirements.

4. Section 432(H) Setback.  The Zoning Ordinance requires a setback of 219 feet.  For the telecommunications facility use as proposed, Cellco sought a variance of 137 feet variance from the existing pavilion structure.  The variance sought is a 63% deviation from the setback requirements.

5.  Section 432(H) Setback.  The Zoning Ordinance requires a setback of 219 feet.  For the telecommunications facility use as proposed, Cellco sought a variance of 134 feet from the dwelling structure.  The variance sought is a 39% deviation from the setback requirements.

6. Section 432(H) Setback.  The Zoning Ordinance requires a setback of 219 feet.  For the telecommunications facility use as proposed, Cellco sought a variance of 131 feet from a shed.  The variance sought is a 40% deviation from the setback requirements.

7. Section 432(H) Setback.  The Zoning Ordinance requires a setback of 219 feet.  For the telecommunications facility use as proposed, Cellco sought a variance of 131 feet from a privy.  The variance sought is a 43% deviation from the setback requirements.

Appx35-36, 74-75, 108-114.

The variances sought, if granted, would increase the nonconforming conditions of the Property.  Appx67.

Cellco prefers to fill the gap with a one site, single telecommunications facility (monopole) proposal.  Appx177, 181-183, 187.

For purposes of its Application, Cellco set the height of the monopole tower at 195 feet.  Appx35-36, 134.

For purposes of its Application, Cellco described an area of the Township for siting a telecommunications facility ("search ring") to fill a gap in coverage.[2] Appx121, 158.

---

[2] A gap in service is not an issue in this case,

The Pennsylvania Department of Conservation and Natural Resources (DCNR) owns property within the described "search ring" for siting a telecommunications facility. Appx93, 121-124.

Cellco considered only privately owned properties within the search ring to fill its gap. Appx122-124.

Although within the search ring, Cellco did not consider DCNR-owned properties as a site for the proposed telecommunications facility use because of a DCNR "moratorium" on "mobile radio projects." Appx280-281, 122-124, 140-145, 152, 178-180.

 Pennsylvania's MPC mandates the formation of a zoning hearing board and vests a zoning hearing board with exclusive jurisdiction to consider and decide upon an application for variance from the standards and requirements of a zoning ordinance, 53 §§ 10901, 10908.1(a)(5), "provided that all of following findings are made":

> i.   That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the properpty is located.

ii.    That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

iii.    That such unnecessary hardship has not been created by the applicant.

iv.    That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

v.    That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 § 910.2.

Section 1002(3) of the Zoning Ordinance provides for grant of a variance by its Zoning Hearing Board upon making the MPC-required findings.

The Application was the subject of a public hearing conducted by the White Deer Zoning Hearing Board in its quasi-judicial capacity.  Testimony and exhibits, subject to cross-examination, were received.

In consideration of the record made before it and upon making the statutory findings required by the Pennsylvania Municipalities Planning Code and the Zoning Ordinance, the White Deer Zoning Hearing Board deliberated, made

findings and concluded that Cellco had failed to meet its burden of proof for the grant of the requested variances.

At the close of the evidentiary record of the public hearing, the White Deer Zoning Hearing Board issued its oral decision denying the Application. The Zoning Hearing Board subsequently issued a written decision setting forth findings of fact and conclusions of law in support of its decision to deny the Application for variances (Decision). Appx218-227.[3]

---

[3] The Pennsylvania Municipalities Planning Code permits the timely filing with a state court of a land use appeal from a decision of a zoning hearing board. Cellco did not file a statutory land use appeal from the Decision.

## SUMMARY OF THE ARGUMENT

Appellant, White Deer Zoning Hearing Board, in an exercise of *bona fide* zoning powers, lawfully denied the Application of Cellco for variances from the Zoning Ordinance for its proposed placement and telecommunications facility use. The White Deer Zoning Hearing Board acted pursuant to the jurisdiction and mandates of the Pennsylvania MPC and in consideration of the body of appellate variance law.  The White Deer Zoning Hearing Board based its Decision upon application of established Pennsylvania law to the record made before it, finding that Cellco failed to meet its burden of proof for the grant of variances, including unnecessary hardship and minimization of the degree of variances sought.

The White Deer Zoning Hearing Board's decision, an action preserved by Section 332(c)(7), did not violate the TCA and was not preempted by the TCA.

The trial court erred in concluding otherwise.

## ARGUMENT

### I.  The Telecommunications Act expressly provides for the "preservation of local zoning authority."

The Telecommunications Act of 1996 (TCA) was enacted to provide a pro-competitive national framework for accelerated private sector deployment of telecommunications and information technologies and services.   Importantly, in relevant part, the TCA expressly preserves local zoning authority, thereby limiting the scope of preemption of the TCA over state and local government actions.  The preservation of local zoning authority is set forth in Section 332(c)(7):

(7) Preservation of local zoning authority

(A) General authority

Except as provided in this paragraph, nothing in this Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof –

\*\*\*

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services

***

(iii) Any decision by a State of local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence[4] contained in a written record.[5]

47 U.S.C. § 332(c)(7)(A).  Actions within the limitations are preempted.

At issue in this matter is the meaning and scope of the "effect of prohibiting" limitation in the context of the White Deer Zoning Hearing Board's denial of the Application for variances from the requirements of the Zoning Ordinance.

---

[4] "Substantial evidence" is understood as such evidence as a reasonable mind might accept as adequate to support a conclusion. *Cellular Telephone Co. v Zoning Bd. of Adjustment of the Borough of Ho-Ho-Ku*s, 197 F.3d 64, 71 (3d Cir. 1999) If any relevant issues identified under local law require findings of adjudicative fact, the local authority's resolution of those factual issues must be supported by substantial evidence. *Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp*., 181 F.3d 403, 408 (3d Cir. 1991)*.* "By employing the term 'substantial evidence [in the TCA],' Congress has invoked . . . our recognition that 'the orderly functioning of the process of [substantial-evidence] review requires that the grounds upon which the administrative agency acted by clearly disclosed. . . . [N]ecessarily implied by the Act's 'substantial evidence' requirement, is that local authorities had to state their reasons for denial."  *T. Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 302, 135 S. Ct. 808, 815 (2015).

[5] The "written record" requirement is not at issue in this case.  As required by the MPC, the White Deer Zoning Hearing Board issued a written decision and the hearing was stenographically recorded and transcript prepared.

### A.    The TCA Section 332(c)(7)(A) "preservation of local zoning authority" is acknowledged in the 2009 and 2018 FCC Declaratory Rulings.

In 2009, the FCC issued a Declaratory Ruling (2009 Declaratory Ruling) to clarify the meaning of Section 332(c)(7)(B)(ii)(II) (significant gap of service).[6]  24 FCC Rcd 13994.  Of particular relevance to this case, the FCC underscored:

> [O]ur interpretation of the [TCA on the issue of a significant gap of service]  . . . does not strip State and local authorities of their Section 332(c)(7) zoning rights.  Rather, we construe the [TCA] to bar State and local authorities from prohibiting the provision of service of individual carriers solely on the basis of the presence of another carrier in the jurisdiction; *State and local authority to base zoning regulation on other grounds is left intact by this ruling." Id.* at 14017 ¶¶ 59-60 (footnotes omitted) (emphasis added) . . . Our determination also serves the [TCA's] goal of preserving State and local authorities' ability to reasonably regulate the location of facilities in a manner that operates in harmony with federal policies that promote competition among wireless providers.  As we indicated above, *nothing we do here interferes with these authorities' consideration of an action on the issues that traditionally inform local zoning regulations.  Thus, where a bona fide local zoning concern, rather than the mere presence of other carriers, drives a zoning decision, it should be unaffected by our ruling today.*

---

[6] In the 2009 Declaratory Ruling, the FCC rejected a "one provider" rule in favor of a standard that requires a provider to show a gap in its own service rather than showing that the area is not already served by another provider.  *Id.* at 13994. It further stated that "it is a violation of Section 332(c)(7)(B)(i)(II) [of the TCA] for a state or local government to deny a personal wireless service facility application solely because the service is available from another provider."  *Id.* at 14000.  The "one provider" rule is not an issue in this case.

*Id.* at 14018 ¶ 62 (footnotes omitted) (emphasis added).

The FCC's 2018 Declaratory Ruling[7] continued to acknowledge the role of

state and local governments in zoning matters and the TCA's preservation of

zoning authority, 9102 ¶ 17.

> [O]ur interpretation remains faithful to the purpose of Section
> 332(c)(7) to balance Congress's competing desires to preserve the
> traditional role of state and local governments in regulating land use
> and zoning, while encouraging the rapid development of new
> telecommunications technologies. Under our interpretation, states and
> localities retain their authority over personal wireless facilities
> deployment.

9157 ¶ 135.  Notwithstanding its articulation of a "materially inhibits" standard.[8]

As recognized by the trial court, the Third Circuit has not yet considered whether

to grant deference to the FCC 2018 Declaration's "materially inhibits" standard.[9]

Appx15-16.

---

[7] *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Invest.*, 33 F.C.C.R. 9088 (2018).

[8] A state or local legal requirement constitutes an effective prohibition[8] if it 'materially inhibits[8] or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment'"2018 Declaratory Ruling at 9102 ¶ 35; see also ¶¶ 10, 31, not only when filing a coverage gap but also when densifying a network or otherwise improving service capabilities. 9102 ¶ 37.

[9] Despite this statement, the trial court characterized it as a "binding regulation." Appx14.

**B.** **This Court has recognized that a *bona fide* local zoning concern can drive a zoning decision without violation of the TCA, thereby recognizing the legal effect of TCA Section 332(c)(7)(A)'s express preservation of local zoning authority.**

In *APT Pittsburgh Ltd. Partnership v. Penn Township*, 196 F.3d 469, 480 (3d Cir. 1999), this Court established an "effect of prohibiting" test for a violation of the TCA: (i) that a proposed facility will fill an existing significant gap in service and (ii) the manner of filling the gap is the least intrusive on values denial sought to serve.[10]  This Court continued to recognize that "[i]nterpreting the TCA's 'effect of prohibiting' clause to encompass every individual zoning denial simply because it has the effect of precluding a specific provider from providing wireless services, however, would give the TCA preemptive effect well beyond what Congress intended." *Id.* at 478.

---

[10] The lower court's comment that the White Deer Zoning Hearing Board "identi[ed] a single value," Appx19, both ignores the state law context in which the White Deer Zoning Hearing Board considered the Application and culls from the Decision other discussion by the Board, see. e.g.  Appx222, ("The law requires . . . ), and other discussion, see e.g. Appx223, (" . . .  detriment [ ] to the welfare of the public.").

**C.    The genesis and parameters of "local zoning authority" preserved by TCA Section 332(c)(7)(A).**

The "local zoning authority" preserved by the TCA is the constitutionally grounded exercise of local government police powers to protect the public health, morals, safety and general welfare through zoning regulation of land use, inclusive of the means for relief from strict application of such regulations by means of a "variance."

It was established in the national lexicon upon the federal government's release of "A Standard State Enabling Act." In the 1920s, the Advisory Committee on City Planning and Zoning, formed by then-Secretary of Commerce Herbert Hoover, drafted a model zoning law, "A Standard State Zoning Enabling Act." (Model Zoning Law). The Model Zoning Law provided for a "board of adjustment" to hear and decide appeals from the strict application of the provisions of the zoning law; for relief to take the form of a "variance;" and for relief pursuant to the following standard:

> [S]uch variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirt of the ordinance shall be observed and substantial justice done."

Act at 11.  The Advisory Committee decried the operation of such board of

adjustment as a means to back door amendments to a legislative enactment,

emphasizing that the power of adjustment would not be the power to modify, vary

or set aside the zoning ordinance – that is, it is not the power to step into the

jurisdiction of the legislature.

It was further recognized in the Supreme Court's seminal opinion in *Euclid*

*v. Ambler Realty Co.  e.g., Euclid v. Ambler Realty Co*., 272 U.S. 365, 388, 47

S.Ct. 114 (1926).  In *Euclid*, the United States Supreme Court recognized

municipal authority to establish land use policy and to implement such policy

through the regulation of land use by zoning.

In Pennsylvania, the General Assembly enabled local municipalities to enact

zoning ordinances and to provide for relief to be obtained from a zoning hearing

board by means of a variance in its enactment of the Pennsylvania Municipalities

Planning Code.[11]  The Pennsylvania Supreme Court characterized such regulatory

authority as quintessentially local, "determined not by an abstract consideration, ...

but by considering it in connection with the circumstances and the locality.");

*Metal Green Inc. v. City of Philadelphia*, 266 A.3d 495, 505 (Pa. 2021) (The

---

[11] "An application for a variance seeks permission to do something which is
prohibited by the zoning ordinance.  In essence, a variance constitutes an . . .
overriding of legislative judgment concerning the will of the citizens of the
community regarding land use." *Id.* at 505.

[Pennsylvania] Constitution grants the General Assembly broad and flexible police powers to enact laws for the purpose of promoting public health, safety, morals, and general welfare. . . . Thus, a local government, through its police power and reflecting the needs of its citizens, may utilize zoning measures that are substantially related to the protection and preservation of the health, safety, morals, or general welfare of the community.").

**II.  The White Deer Zoning Hearing Board denied Cellco's application for dimensional variances where Cellco failed to meet its burden of providing record support for the required findings for the grant of a variance as set forth in Section 910.2 of the Pennsylvania Municipalities Planning Code and as guided by the body of controlling law articulated by the Pennsylvania Supreme Court and Commonwealth Court.  The Decision of the White Deer Zoning Hearing Board does not violate the TCA.**

**A.  In its adjudication of a TCA claim and determination whether the municipal zoning decision is supported by substantial evidence, the court must be guided by relevant state law authorities.[12]**

"The TCA itself does not provide the legal basis to deny an application to construct a personal wireless facility.  That authority must be found in state or local law." *Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 644 (2d. Cir. 1999). Consequently, the reviewing court's task is to determine whether the decision, as

---

[12] 28 USCS § 1652, captioned "State laws as rules of decision," proscribes that "[t]he laws of the several states . . . shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

guided by state and local law, is supported by substantial evidence. *Cellular Telephone Co. v Zoning Bd. of Adjustment of the Borough of Ho-Ho-Ku*s, 197 F.3d 64, 71 (3d Cir. 1999); *see also American Tower Corp. v. City of San Diego*, 763 F.3d 1035 (9th Cir. 2014) ("The inquiry requires [the reviewing court] to determine whether the zoning decision at issue is supported by substantial evidence in the context of applicable *state and local law*"; affirming denial of conditional use zoning application upon consideration of evidence of record in context of City ordinance) (italics in the original (citations omitted); *Second Generation Properties, L.P. v. Town of Pelham*, 313 F.3d 620 (2002) (affirming denial of variance upon application of the test for establishing unnecessary hardship established by state law).

This Court has echoed the foregoing principle in *APT Pittsburgh Ltd. Partnership v. Penn Township*, 196 F.3d 469, 475, 479 (3d Cir. 1999).  Upon applying Pennsylvania law, this Court reversed the trial court's grant of complaint that the municipality's denial of an exclusionary zoning claim violated the TCA. Critically, this Court admonished that:

> "[i]nterpreting the TCA's 'effect of prohibiting' clause to encompass every individual zoning denial simply because it has the effect of precluding a specific provider from providing wireless services [ ] would give the TCA preemptive effect well beyond what Congress intended.  . . .  To [construe the 'effect of prohibiting' clause otherwise] would provide wireless service providers with a wildcard that would trump any adverse zoning decision that impaired their ability to provide wireless service, and would thereby create the

proverbial 'exception that swallowed the rule' that would be entirely inconsistent with § 337(c)(7)'s structure.

*Id*. at 478, *citing c.f. Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 639 (2d. Cir. 1999) (rejecting similar claim "because it would require court to 'read the TCA to allow the goals of increased competition and rapid deployment of new technology to trump all important considerations, including the preservation of the autonomy of state as and municipalities.") and *AT&T Wireless PCS, Inc. v, Virginia Beach*, 153 F.3d 423, 428 (4th Cir. 1998) ("Any reading of subsection (B)(i)(II) that allows the subsection to apply to individual decisions would effectively mollify local authority by mandating approval of all (or nearly all) applications . . . .").

In *Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.*, 181 F.3d 403, 408 (3d Cir. 199), this Court again affirmatively recognized that "[S]ection 332(c)(7)(B)(iii) of the TCA is not intended to supplant the substantive standards to be applied under state or local law.*"Cf. Horvath Towers III., LLC v. Zoning Hearing Bd. of Montoursville Borough,* 218 U.S. Dist. LEXIS 5563 (Pa. M.D. 2018) (exclusionary challenge to zoning board's decision "will be analyzed under the proper state law framework and not under the [TCA]"), *Northeast Pa. SMSA LP v. Smithfield Twp. Bd. of Supers*., 433 F. Supp. 3d 703, 717 (Pa. M.D. 2020) ("In the context of Section 332(c)(7)(B)(iii), the decision process itself is governed by state and local zoning laws. The reviewing court's task is to determine whether the decision, as guided by local law, is supported by substantial

evidence. . . .")  This Court directed that "the first step for the court in a case in which the provider of wireless services is relying on state or local law is to identify the relevant issues under the law." *Id.*  The foregoing judicial pronouncements are compelled by the TCA, enacted by Congress with an express provision for the preservation of local zoning authority.

### 1.  Pennsylvania law on variance.

Pennsylvania has enacted enabling legislation, the Pennsylvania Municipalities Planning Code, for municipal regulation of land use by zoning.  The MPC provides for the "variance" as the means for seeking relief from the standards and requirements of a municipal zoning ordinance. The MPC mandates the formation of a zoning hearing board and vests the zoning hearing board with exclusive jurisdiction to consider and decide upon an application for variance.

The MPC further provides that "[t]he [zoning hearing] board may grant a variance, *provided that all of the following findings are made*":

i. That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

ii. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict

conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

 iii. That such unnecessary hardship has not been created by the applicant.

 iv. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

 v. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 §10910.2 (emphasis added).[13] As established by the Supreme Court of Pennsylvania, the applicant for variance bears the burden of proof. *Kneebone v. Zoning Hearing Bd.*, 273 A.3d 566 (Pa. 2021) (reversing grant of variance because not predicated on satisfaction of the MPC findings where record lacked demonstration of unnecessary hardship); *cf. Fairview Twp. v. Fairview Twp. Zoning Hearing B*d., 233 A.3d 958 (Pa. Cmwlth. 2020) (reversing grant of variances to erect a cellular tower because the company failed to establish

---

[13] White Deer's Zoning Ordinance Section 1002(3) states required findings for the grant of a variance which mirror the MPC-required findings.
"The failure of a zoning board to consider each requirement of a zoning ordinance prior to granting a variance is an error of law." *Larsen v. Zoning Bd. of Adjustment*, 672 A.2d 286 (Pa. 1996).

unnecessary hardship, where the hardship was only a business hardship).  Each of these required findings must be demonstrated in the record for the grant of a variance from a zoning ordinance. Proof of one requirement does not entitle an application to a variance where it has failed to prove another requirement.  *Larsen v. Zoning Bd. of Adjustment*, 672 A.2d 286 (Pa. 1996).

The Pennsylvania Supreme Court has recognized that a zoning "variance by nature authorizes actions inconsistent with legislative restrictions on land use.  As a consequence, any such authorization, while allowed by law, must be accomplished in compliance with standards set forth by law." *Kneebone,* 273 A.3d at 572. "Judicial caution and restraint are particularly warranted in areas such as zoning, where the General Assembly and local lawmaking bodies have endeavored to develop and implement laws and regulations reflecting the policies that will facilitate land use appropriate to particularized zoning needs and concerns." *Metal Green*, 266 A.2d at 511 (in consideration of a variance) (citations omitted). Pursuant to the statewide legislative scheme, a grant of variance from the terms of a zoning ordinance is "extraordinary relief" that can be granted only upon making all of the findings expressly set forth in Section 910.2 of the MPC.  A zoning hearing board properly exercising its jurisdiction in consideration of a request for relief does so with full awareness of the statutory criteria and the extensive body of appellate court law addressing whether the zoning hearing has made an error of

law by failing to make the required findings and/or abused its discretion by making findings not supported by the record.  The White Deer Zoning Hearing Board understood both its authority and duty in its consideration and denial of the Application for variances.

### 2.  Required finding of "unnecessary hardship."

Under Pennsylvania law, the core finding for the grant of a variance is unnecessary hardship arising from a physical condition of the property itself.  The Pennsylvania Supreme Court has underscored that "to give meaning to the statutory language appearing in the MPC, property owners must make some showing" "that the hardship must truly be an 'unnecessary' one unique or peculiar ***to the property*** ' and not simply a 'mere hardship.'" [14]   *Kneebone,* 273 A.3d at 20 (emphasis added) (citations omitted); *see also Yeager v. Zoning Hearing Bd. of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (variance "is appropriate only where the *property*, not the person, is subject to hardship"; "[A] variance is not warranted where the hardship is related to the landowner's desired use of the land, rather than the land itself."); *Fairview Twp. v. Fairview Twp. Zoning Hearing Bd.*,

---

[14] Most of the rules which limit variances are designed to keep the variance power from growing to a general legislative power.  This is the central problem in variance law.  It is reflected in the concept that the hardship which justifies a variance must not be merely that hardship which results of necessity from a valid zoning regulation; in the requirement that a property be 'uniquely' affected in order to justify a variance  . . . ." Ryan, Pennsylvania Law and Practice, § 6.1.3.

233 A.3d 958 (Pa. Cmwlth. 2020) (where the hardship was only an "economic" or "business hardship", grant of variance was in error; concluding that neither a gap in nor need to improve coverage (densification) constituted the required unnecessary hardship for the grant of a variance from the terms of a zoning ordinance as mandated by Section 910.2 of the MPC and binding on the zoning hearing board).[15]

**B.    Substantial evidence supports the White Deer Zoning Hearing Board's denial of the Application for variances.**

White Deer Zoning Hearing Board, while functioning in its quasi-judicial capacity within its authority under Pennsylvania's MPC and the Zoning Ordinance – expressly preserved by Section 332(c)(7) of the Telecommunications Act – and

---

[15] The Pennsylvania Supreme Court has relaxed the quantum of proof necessary to establish unnecessary hardship for a dimensional variance, permitting the consideration of multiple factors including the economic detriment to the applicant, whether the cost to conform the property to the zoning ordinance is prohibitive, and the characteristics of the surrounding neighborhood.[15] *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998).[15] Notwithstanding, *Hertzberg* did not alter the principal that a substantial burden must attend all dimensionally compliant uses of the property, not just the particular use the owner chooses. *Kneebone* (a grant of variance without evidence of hardship "would stretch the concept of relaxation beyond the breaking point."); *see also Yeager* (an applicant is not entitled to a dimensional variance under the relaxed standard set forth in *Hertzberg* where no hardship is shown or where the hardship alleged amounts to an applicant's mere economic desire).

for *bona fide* zoning reasons supported by substantial evidence of record denied the Application for variances.

In considering the Application for variances for a telecommunications facility use, the White Deer Zoning Hearing Board was not called upon to operate in a legal vacuum. The mandates of Pennsylvania statute, the MPC, and the controlling opinions of the Pennsylvania appellate courts and long-existing legal principles articulated by these courts informed its consideration and action on the requested variances.

As required by the MPC, the White Deer Zoning Hearing Board assessed the Application and record made by Cellco for the purpose of making the findings required for the grant of a variance. Based on substantial evidence of record, the White Deer Zoning Hearing Board found that Cellco had not satisfied its burden of proof for the required findings for the grant of the requested variances.

> **1. Substantial evidence supports the White Deer Zoning Hearing Board's declination to make the MPC-required finding that Cellco had demonstrated "unnecessary hardship".**

The record is devoid of any evidence of a physical condition of the Property that establishes the "unnecessary hardship" required by the MPC. Cellco sought the variances based solely on business need.

A failure to establish a physical condition of the Property as the source of

unnecessary hardship, as a matter of both law and substantial evidence, compelled

and supports the White Deer Zoning Hearing Board's conclusion. The denial of the

variances was fully grounded in *bona fide* zoning issues arising from the MPC,

local land use policy implemented through the enacted Zoning Ordinance, and the

record made before the Zoning Hearing Board regarding the specific Property. The

TCA preserves the Zoning Hearing Board's exercise of such zoning authority.

> **2. Substantial evidence supports the White Deer Zoning Hearing Board's declination to make the MPC-required finding that Cellco had satisfied the minimization requirement.**

The variances from the Zoning Ordinance sought by Plaintiff in its

Application to the White Deer Zoning Hearing Board are numerous and substantial

(39% - 94% deviation from the terms of the Zoning Ordinance). The Property that

is the subject of the Application is already in residential use, and improved with a

dwelling structure and accessory buildings and structures.  The Application

contained no proposal to improve upon these limiting conditions driving and

affecting the application for variances from both the lot size and the setback

requirements, e.g., cessation of the residential use; removal or resiting of the

residential structure and other accessory buildings and structures.  Finally, the

Application, if granted, would increase the nonconforming condition of the residential use of the Property.[16]

A failure to meet the minimization requirement of the MPC compels and supports the White Deer Zoning Hearing Board's conclusion. The denial of the variances was fully grounded in *bona fide* zoning issues arising from the MPC, local land use policy implemented through the enacted Zoning Ordinance, and the record made before the Zoning Hearing Board regarding the specific Property. The TCA preserves the Zoning Hearing Board's exercise of such zoning authority.

**III.    The White Deer Zoning Hearing Board's Decision does not violate either this Court's "least intrusive" standard or the FCC 2018 Declaration's "materially inhibits" standard.**

**A.    No proposal was offered to cease the residential use or resite the residential and other structures on the Property; Cellco relied solely on a private agreement with the owner of the Property for lease of a certain portion of the Property.**

The Property that is the subject of the Application for variances is in residential use and improved with a dwelling structure and accessory buildings and

---

[16] The Zoning Ordinance requires 3.0 acres for the principal dwelling and an additional 1.0 acre for the proposed telecommunications facility. The 1.98 acre Property currently does not meet the minimum lot size requirement for the residential use.  Cellco proposes to further reduce the Property acreage required for residential use by leasing lease and dedicated telecommunications facility use of 2600 square feet.

structures.  Cellco proposed to lease a portion of the Property.  The Application

contained no proposal to improve upon the existing use and improvements limiting

conditions, including cessation of the residential use and removal or resiting of the

residential structure and other accessory buildings and structures or alternative to a

single site monopole.  Appx221-227.  Consequently, Cellco failed to establish that

the proposed use of the Property met the this Court's standard or the FCC 2018

standard.

> **B.**    **Cellco identified DCNR lands as suitable to fill its gap, but made the unilateral business decision to not consider those lands because of a "moratorium" which operates as an act of a State in violation of the TCA.**

Cellco described the "search ring" for the placement of the proposed

telecommunications facility to fill its gap in services to include lands owned by

DCNR.  Appx122, 180.  Cellco admitted that the lands owned by DCNR met its

needs. Appx142, 144-155, 180.  Nonetheless, Cellco further admitted that it did not

consider these lands for the facility because of DCNR's "moratorium" on mobile

radio towers.[17]  Appx124,140, 142, 144-145.

---

[17] The TCA applies to State and local governments alike.  A state – including a state agency such as the DCNR – is subject to the TCA's preemption.  In its 2018 Declaratory Order, the FCC enumerated certain actions to violate the TCA, particularly calling out a government moratorium precluding the deployment of telecommunications facilities as unlawful.   The DCNR "moratorium", an action proscribed by the FCC, 2018 Declaratory Ruling at 9102 ¶ 22, falls squarely within the ambit of the TCA preemption.

The White Deer Zoning Hearing Board's decision that the Cellco failed to satisfy the state authorities for the grant of the variances does not morph into a violation of the TCA merely by consequence of Cellco's business decision to exclude the lands of the DCNR from consideration.

**IV.    The trial court failed to give proper weight to Section 332(c)(7)(B) of the TCA and the body of Pennsylvania statutory and common law controlling zoning hearing board decisions on variances and made an error of law in giving deference to Cellco's unilateral decision to consider only privately owned properties.**

In consideration of a TCA claim, the reviewing court must apply state and local authorities. In this case Pennsylvania authorities include a statewide statute – the MPC which requires certain findings for the grant of a variance – and the extensive body of law established by the Pennsylvania Supreme Court and Commonwealth Court.  The trial court here made no effort to do so.    Having failed to do so, the trial court's conclusion assigns a preemptive effect to the TCA that eviscerates Section 332(c)(7)(A).   The trial court's holding creates a regulatory vacuum, giving Cellco *carte blanche* authority to select a site for placement of facilities without regard for local zoning standards, and to assert a TCA violation because its business plans conflict with the zoning enactment.   This produces an absurd result where the TCA expressly preserves local zoning authority.

In consideration of Cellco's TCA claim, the trial court concluded – in reliance on the asserted unavailability of the lands of DCNR because of the state actor's "moratorium" – that the proposed use of the Property was a "good faith effort, Appx19, which satisfied both the Third Circuit or the FCC's standard.  TCA preemption applies equally to the State actor.  The FCC has declared that a "moratorium" violates the TCA.  There is no authority under the TCA, the FCC Declaratory Orders or the decisions of this Court and other circuit courts for the trial court's deference to Cellco's unilateral business decision to exclude consideration of DCNR lands located within its search parameters and to consider only privately owned lands.  The trial court's conclusion resting such deference as is an error of law.

## CONCLUSION

Based on the foregoing argument, Appellant White Deer Township Zoning Hearing Board respectfully requests this Honorable Court enter an Order reversing the Judgment of the United States District Court for the Middle District of Pennsylvania, and reinstate the Written Decision of the White Deer Township Zoning Hearing Board.

Respectfully Submitted,

Date:  October 31, 2022             /s/ Susan J. Smith
Susan J. Smith, Esquire
Attorney for Appellant

## CERTIFICATE OF COUNSEL

I, Susan J. Smith, Esquire, hereby certify that I am a member of the bar of the Third Circuit Court of Appeals.

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief consists of approximately 6,874 words (calculated via Microsoft Word) and does not exceed the 14,000 word limit.

## IDENTICAL PDF AND HARD COPY CERTIFICATE

I hereby certify that the PDF file and hard copies of this brief are identical.

## CERTIFICATE OF VIRUS SCAN

This electronic filing of the Brief and Appendix have been scanned during preparation and upon sending by Webroot software and no viruses were detected.

Respectfully Submitted,

 /s/ Susan J. Smith
Susan J. Smith, Esquire
Attorney for Appellant

## <u>CERTIFICATE OF SERVICE</u>

I, Susan J. Smith, Esquire, do hereby certify that on this date, October 31, 2022, I served a true and correct copy of the Appellant's Brief, Appendix I, Appendix II, and Appendix III upon:

COUNSEL FOR THE APPELLEE
VIA ECF:

Scott H. Angstreich, Esq.
Kellogg Hansen Todd Figel & Frederick
1615 M Street, N.W.
Sumner Square, Suite 400
Washington, DC  20036

James Ruck, Esq.
Kellogg Hansen Todd Figel & Frederick
1615 M Street, N.W.
Sumner Square, Suite 400
Washington, DC  20036

Kevin M. Walsh, Jr., Esq.
Hourigan Kluger & Quinn
600 Third Avenue
Kingston, PA  18704

Respectfully Submitted,

 /s/ Susan J. Smith
Susan J. Smith, Esquire
Attorney for Appellant